**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **RAFAEL BARDALES** | |
| **Plaintiff,** | |
| **v.** | **CIVIL NO. 2:20-CV-340** |
| **FELIX JOHN HOSKIN, III and HOSKIN HOMES OF LOUISIANA, LLC** | |
| **Defendants.** | |

## COMPLAINT

Plaintiff Rafael Bardales asserts his causes of action against defendants Felix John Hoskin, III and Hoskin Homes of Louisiana, LLC as follows:

### THE PARTIES

1.      Plaintiff is Rafael Bardales, a person of age and majority, who is domiciled in Louisiana and resides in Jefferson Parish.

2.      Defendant is Felix John Hoskin, III ("John Hoskin"), a person of age and majority, and upon information and belief who is domiciled in Louisiana and resides in Plaquemines Parish.

3.      Defendant is Hoskin Homes of Louisiana, LLC ("Hoskin Louisiana"), a domestic limited liability company organized in Louisiana, registered and headquartered in Plaquemines Parish, and actively doing business within Louisiana.

4.      Hoskin Louisiana's registered agent is its owner, John Hoskin.

### JURISDICTION AND VENUE

5.      The Court has subject-matter jurisdiction over Mr. Bardales's FLSA claims in this matter pursuant to 28 U.S.C. § 1331 (federal question) 29 U.S.C. § 207 *et seq*. (the Fair Labor Standards

Act overtime provisions), and 29 U.S.C. § 215 *et seq*. (the Fair Labor Standards Act anti-retaliation provisions) as more particularly set-out herein.

6.     The Court has personal jurisdiction over Felix John Hoskin, III ("John Hoskin") because he is a citizen of Louisiana and is present within the forum at the time this lawsuit was filed.

7.     Alternatively, the Court has personal jurisdiction over John Hoskin as he regularly transacts business in Louisiana, has created, registered, and owns one or more limited liability companies located in Louisiana, regularly employs Louisiana citizens, committed the specific unlawful acts within Louisiana giving rise to the causes of action in this case, and derives substantial revenue from the services he or his companies provide in Louisiana.  Thus, Mr. Hoskin has established minimum specific contacts with Louisiana, arising from the specific facts of this case, comporting with the requirements of fair play, substantial justice, and the Fourteenth Amendment of the Constitution of the United States.

8.     The Court has personal jurisdiction over Hoskin Homes of Louisiana, LLC ("Hoskin Louisiana") because it is a domestic limited liability company whose registered agent is domiciled in Louisiana and, thus, the company is present within Louisiana at the time this lawsuit commenced.

9.     Alternatively, the Court has personal jurisdiction over Hoskin Louisiana as it regularly transacts or transacted business in Louisiana, regularly employs or has employed Louisiana citizens, committed the specific unlawful acts within Louisiana giving rise to the causes of action in this case, and derives or has derived substantial revenue from the services it provides or provided in Louisiana.  Thus, Hoskin Louisiana has established minimum specific contacts with Louisiana, arising from the specific facts of this case, comporting with the requirements of fair play, substantial justice, and the Fourteenth Amendment of the Constitution of the United States.

2

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the parties contracted for Mr. Bardales's employment and engaged in the FLSA and state-law wage violations alleged in this matter, and Mr. Bardales's resulting harm was suffered, in this jurisdiction (specifically, Plaquemines Parish).

## PROCEDURAL AND STATUTORY ALLEGATIONS

11.     Hoskin Louisiana employed Mr. Bardales continuously from on or about April 2017 until he was terminated on or about August 10, 2019.

12.     As alleged throughout this complaint, Hoskin Louisiana purposefully misclassified Mr. Bardales as an independent contractor to avoid its obligations to him under the Fair Labor Standards Act (as more particularly set out later in this complaint).

13.     Upon information and belief, throughout Mr. Bardales's entire employment with the company, Hoskin Louisiana was an enterprise engaged in commerce because it had two or more employees who were engaged in commerce, specifically that the employees built and renovated homes as contracted for by Hoskin Louisiana, using both tools and materials that had passed through interstate commerce, Hoskin Louisiana then sold those homes, or contracted for their renovation, in interstate commerce, and Hoskin Louisiana had gross volume of sales made or business done in 2018 and 2019 greater than $500,000.

14.     As alleged throughout this complaint, during certain workweeks and pay periods Mr. Bardales worked more than 40 hours per week and therefore earned and was owed overtime pay at one-and-one-half times his normal rate, but Hoskin Homes willfully failed to pay Mr. Bardales overtime wages as required under the FLSA.

15.     Prior to August 10, 2019, Mr. Bardales complained to John Hoskin, the owner of Hoskin Louisiana, that Mr. Bardales was owed unpaid overtime wages, and would not work more than 40 hours per week unless and until Mr. Hoskin paid Mr. Bardales those owed overtime wages.

16.     In response, on or about August 10, 2019, John Hoskin terminated Mr. Bardales's employment because of his protected complaint.

17.     As alleged throughout this complaint, John Hoskin was the sole owner who held exclusive and total operating control over the operations of Hoskin Louisiana, and upon information and belief was the actual person who purposefully misclassified Mr. Bardales as an independent contractor, set his hours and payrates, supervised and controlled his work, denied him owed overtime wages, and later fired Mr. Bardales for complaining about his unpaid overtime wages, such that Mr. Hoskin was Mr. Bardales's employer and is equally liable to Mr. Bardales under the FLSA as is Hoskin Louisiana.

**FACTUAL ALLEGATIONS**

18.     To the best of Mr. Bardales's recollection, Hoskin Louisiana first hired and employed Mr. Bardales in approximately April 2017.

19.     Hoskin Louisiana is in the business of building and renovating homes and other buildings throughout southeastern Louisiana.

20.     At all relevant times in this case, Hoskin Louisiana employed Mr. Bardales as a construction worker who focused on painting, drywalling, and other finishing work at the homes and buildings under contract by the company.

21.     At all relevant times during his work for Hoskin Louisiana, Mr. Bardales handled and worked with tools, construction materials, and supplies that, upon information and belief, had traveled across state lines.

22.     At all relevant times in this case, Mr. Bardales actually performed work for Hoskin Louisiana as an employee rather than an independent contractor.

23.     Mr. Bardales's sole manager was John Hoskin, the owner of Hoskin Louisiana.

24.     Mr. Bardales worked full-time for defendants and at their direction.

25.     Mr. Bardales was paid hourly for his work as opposed to a contracted or otherwise per-job rate.

26.     While working for the defendants in this case, from approximately April 2017 through August 2019 when the defendants terminated his employment, Mr. Bardales was completely dependent on the defendants for his work and livelihood.

27.     Mr. Bardales was required to report to work at the specific times and days as directed by defendants.

28.     Mr. Bardales was not permitted to leave work until directed by the defendants.

29.     Mr. Bardales performed the specific work projects as directed by the defendants.

30.     The defendants generally bought all tools and supplies used by Mr. Bardales to perform his work.

31.     The defendants did not require Mr. Bardales to sign any sort of purported independent contractor agreement.

32.     Mr. Bardales exercised no discretion or managerial decision-making in his job.

33.     Mr. Bardales's work responsibilities, including how he completed his work, were exclusively controlled by defendants.

34.     Mr. Bardales had either no or otherwise insignificant money or other overhead invested in his job because all aspects of his job, how he performed his job, when he performed his job, what

he used to perform his job, where he performed his job, and what jobs he was given were all exclusively controlled and provided by defendants.

35.     Mr. Bardales had no opportunity for loss at his job because he had either no or otherwise insignificant capital or finances invested in the job.

36.     Mr. Bardales's opportunity for profit was exclusively controlled by defendants because the defendants controlled how many hours Mr. Bardales worked, when, and where.

37.     During all relevant times in this case, defendants purposefully misclassified Mr. Bardales as an independent contractor rather than as an employee to avoid paying Mr. Bardales, *inter alia*, payroll taxes and wages owed to him including overtime wages, as required by the FLSA.

38.     At all times during this case, defendants employed Mr. Bardales to perform services and labor at various construction projects, as described above.

39.     At all times during this case, defendants promised to pay Mr. Bardales $16.25/hour for his work.

40.     Upon information and belief, defendants knew that Mr. Bardales was actually an employee rather than a contractor, and knew that under the FLSA he was owed overtime wages for his hours worked in excess of 40 per week, but willfully refused to pay Mr. Bardales those overtime wages.

41.     Accordingly, defendants willfully misclassified Mr. Bardales as an independent contractor instead of an employee when he was hired to provide services and labor for defendants in furtherance of their various construction projects, as described above.

42.     Mr. Bardales regularly worked more than forty (40) hours in a workweek for defendants, often working fifty (50) to sixty (60) hours in a workweek (and sometimes more).

43.     Upon information and belief, since the beginning of his employment with defendants, he worked at least, on average, 10 hours of overtime a week, every week of his employment through termination, totaling approximately and at least 1250 hours of overtime work.

44.     When Mr. Bardales worked over forty (40) hours in a week, defendants would pay Mr. Bardales his straight-time wages, but not overtime wages at the rate of one-and-one-half (1.5x) of Mr. Bardales's straight-time rate.

45.     Upon information and belief, and at the FLSA required rate of time-and-a-half his regular pay, defendants owe Mr. Bardales the approximate sum of $10,150.00 in unpaid wages.

46.     At some point prior to August 10, 2019, Mr. Bardales verbally complained to John Hoskin that Hoksin owed him overtime wages for working more than 40 hours in a week, and Mr. Bardales would not work on weekends (i.e., more than 40 hours per week) unless defendants paid Mr. Bardales the overtime he was due for those hours.

47.     Defendants continued refusing to pay Mr. Bardales overtime wages.

48.     During the workweek that began on Monday, August 5, 2019, Mr. Bardales worked 43 hours as of the end of the workday on Friday, August 9.

49.     Prior to Saturday, August 10, Mr. Bardales informed Mr. Hoskin that he would not work that day because of the unpaid overtime wage issue.

50.     In response, on August 10, 2019, Mr. Hoskins texted Mr. Bardales and wrote, among other things, "I think it's time you find another job."

51.     Mr. Bardales responded, among other things, "it is Saturday when we don't even get paid for overtime on Saturdays.  That's fine you can fire me but you know that shit isn't fair nor right."

52.     Mr. Hoskin responded by terminating Mr. Bardales's employment, and wrote "Your [sic] an independent contractor.  I don't have to pay you overtime, but I do.  So ur [sic] incorrect in your

assumptions.  Anything over 40 hrs is paid overtime.  You never let me know you wouldn't be here.  Sorry, not working out lately."

53.     Upon information and belief, John Hoskin and Hoskin Louisiana terminated Mr. Bardales specifically because he had previously complained that defendants were not paying him required overtime wages for his hours worked greater than 40 per week, and that he would no longer work overtime hours without defendants actually paying him overtime wages for that work.

54.     Upon information and belief, John Hoskin's statement to Mr. Bardales that "Your [sic] an independent contractor.  I don't have to pay you overtime, but I do.  So ur [sic] incorrect in your assumptions.  Anything over 40 hrs is paid overtime.  You never let me know you wouldn't be here." is both materially untrue and a statement made for the pretextual purpose of attempting to cover-up the fact that defendants willfully misclassified Mr. Bardales as an independent contractor, failed to pay Mr. Bardales required overtime wages for hours he actually worked, and terminated him because of his prior protected complaint.

55.     Because of defendants' unlawful employment actions, Mr. Bardales is out approximately $10,150.00 in unpaid overtime wages.

56.     Because of defendants' unlawful employment actions, specifically misclassifying him as an independent contractor, Mr. Bardales owes or will owe significant self-employment taxes on the straight-time pay he already received from defendants.

57.     Because of defendants' unlawful employment actions, specifically failing to pay Mr. Bardales overtime wages as they accrued, Mr. Bardales will owe significant income taxes on his overtime wages when they are paid.

58.     Because of defendants' unlawful employment actions, specifically terminating Mr. Bardales's employment in retaliation against him because of his protected complaint, and despite

his diligent efforts to find re-employment, Mr. Bardales is out a significant amount of lost back wages.

59.     Likewise, Mr. Bardales has been unable to find consistent, comparable work since his unlawful termination, and is now forced to travel around the United States looking for jobs as he can find them, which has further caused Mr. Bardales stress, mental anguish, inconvenience, out-of-pocket expenses, and loss of enjoyment of life.

60.     Because of defendants' unlawful employment actions, specifically terminating Mr. Bardales's employment in retaliation against him because of his protected complaint, Mr. Bardales has suffered mental anguish, inconvenience, loss of enjoyment of life, emotional distress, and out-of-pocket expenses.

61.     Upon information and belief, at all times relevant to this case, defendants took these unlawful employment actions against Mr. Bardales willfully, in knowing violation of the law, and for the purposes of enriching themselves to the expense of Mr. Bardales.

## CAUSES OF ACTION

### A.     Unpaid Overtime Wages under the Fair Labor Standards Act Against John Hoskin and Hoskin Louisiana

62.     Mr. Bardales states a cause of action against Felix John Hoskin, III and Hoskin Homes of Louisiana, LLC for unpaid overtime wages and all other available damages under the Fair Labor Standards Act, codified at 29 U.S.C. § 207 *et seq.*

63.     Under the Fair Labor Standards Act, "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  An employer who violates the FLSA overtime provisions is liable to the employee for actual unpaid wages "as well as an

'additional equal amount as liquidated damages.'" *Black v. SettlePou, P.C.*, 732 F.3d 492, 501 (5th Cir. 2013) (citing 29 U.S.C. § 216(b) (regarding overtime wages specifically). A prevailing employee is also entitled to his reasonable attorney's fees and costs. *Id.* at 502.

64.     To determine whether a worker is an employee protected under the FLSA versus an "independent contractor," the focus is on "whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself." *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008). Whether the employer or employee subjectively believes that the worker is an independent contractor and not an employee is irrelevant, because "[s]ubjective beliefs cannot transmogrify objective economic realities. A person's subjective opinion that he is a businessman rather than an employee does not change his status." *Id.* at 346. Instead, to determine whether a worker is economically dependent on the employer, the court considers "(1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship." *Id.* at 343.

65.     Mr. Bardales incorporates by reference here all prior obligations in this complaint.

66.     Further, in this case, Hoskin Homes of Louisiana employed Mr. Bardales for many months as its construction worker throughout Southeastern Louisiana. Upon information and belief, Mr. Hoskin is the sole owner of Hoskin Louisiana, and exclusively controls all its operations. For all legal and practical purposes under the FLSA, both Hoskin Louisiana and Mr. Hoskin were Mr. Bardales's employers. Under the Fifth Circuit's prevailing economic realities test, Mr. Bardales was really the employee of defendants because defendants exclusively controlled Mr. Bardales work, his opportunity for profit and loss, and the parties' employment relationship. The defendants

set Mr. Bardales's pay, his hours worked, the type of work he was assigned, the work location, and supervised Mr. Bardales's efforts.  The defendants paid Mr. Bardales by the hour instead of a flat or per-job rate.  The defendants did not attempt to have Mr. Bardales sign any sort of independent contractor agreement.  Mr. Hoskin terminated Mr. Bardales by text-message in retaliation against him for complaining about unpaid overtime wages.  The defendants paid for all or most of the tools, equipment, and materials Mr. Bardales used in his work.  Mr. Bardales was at all times in this case the defendants misclassified employee.

67.     Further, upon information and belief, the defendants willfully misclassified Mr. Bardales as an independent contractor specifically to avoid paying Mr. Bardales overtime wages and the defendants' responsible share of Mr. Bardales's employment taxes.  Upon information and belief, the defendants took these unlawful actions in knowing disregard of the FLSA and for the purpose of enriching themselves to the expense of Mr. Bardales.  When Mr. Bardales finally complained, the defendants terminated him because of that complaint.

68.     Upon information and belief, since he first began working for defendants in approximately April 2017, Mr. Bardales worked approximately 1250 hours of overtime.  While defendants paid Mr. Bardales his regular pay for these overtime hours, they still owe Mr. Bardales the extra "half-time" multiplier for each hour worked.  At all times in this case, defendants paid Mr. Bardales $16.25 per hour.  Defendants still owe Mr. Bardales the half-time multiplier rate of $8.12 for each hour of overtime worked, for approximate, total unpaid overtime wages of $10,150.00.  Because defendants willfully failed to pay Mr. Bardales his overtime wages, defendants are also liable to Mr. Bardales for liquidated damages under the FLSA equal to the value of his unpaid overtime wages.

69.     Accordingly, defendants are individually and solidarily liable to Mr. Bardales for all his unpaid overtime wages in this case, plus liquidated damages, reasonable attorney's fees, and costs.

**B.      Retaliation under the Fair Labor Standards Act Against John Hoskin and Hoskin Louisiana**

70.     Mr. Bardales states a cause of action against Felix John Hoskin, III and Hoskin Homes of Louisiana, LLC for retaliation, specifically retaliatory termination, and under the Fair Labor Standards Act, codified at 29 U.S.C. § 215 *et seq.*

71.     Under the FLSA, it is unlawful for any employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint . . . related to this chapter[.]"  29 U.S.C. § 215(a)(3).  An employer who violates the the FLSA's anti-retaliation provision is liable to the employee for lost wages, liquidated damages, reasonable attorney's fees and costs, and "such legal or equitable relief as may be appropriate."  29 U.S.C. § 216(b).  In the Fifth Circuit, damages include "the compensation for emotional distress that is typically available for intentional torts like retaliatory discharge."  *Pineda v. JTCH Apartments, L.L.C.*, 843 F.3d 1062, 1064 (5th Cir. 2016).  Additionally, plaintiff in this case specifically pleads and requests punitive damages for defendant's retaliatory misconduct.

72.     Mr. Bardales incorporates by reference here all prior obligations in this complaint.

73.     Further, in this case, as alleged, Mr. Bardales complained to John Hoskin in his capacity as owner of Hoskin Louisiana at some point prior to August 10, 2019.  In response, John Hoskin, in his capacity as both owner of Hoskin Louisiana and Mr. Bardales's de facto employer under the FLSA, retaliated against Mr. Bardales by terminating his employment.  Further, Mr. Hoskin sent Mr. Bardales a text containing material untrue claims that Mr. Hoskin was complying with the overtime provisions of the FLSA, and upon information and belief Mr. Hoskin did this specifically to try and cover-up the defendants' unlawful employment actions.  At all times in this case, Mr.

12

Bardales alleges that defendants took these actions to enrich themselves at the expense of Mr. Bardales. The aftermath of defendants' retaliatory termination is that Mr. Bardales has been unable to find consistent, comparable work, and is now forced to travel around the United States looking for jobs as he can find them, which causes him significant stress, worry, inconvenience, loss of enjoyment of life, and out-of-pocket expenses.

74.     Accordingly, defendants are individually and solidarily liable to Mr. Bardales for all his lost wages, liquidated damages, compensatory damages, punitive damages, reasonable attorney's fees, and costs.

## JURY DEMAND

Mr. Bardales requests a trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Rafael Bardales prays that this complaint be deemed good and sufficient; that it and summons be served upon defendants Felix John Hoskin, III and Hoskin Homes of Louisiana, LLC; and, after due proceedings are had, that judgment be entered in favor of plaintiff and against all defendants providing the following relief:

1. The entry of a declaratory judgment against defendants declaring that the practices complained of in this complaint are unlawful under the FLSA, and that defendants willfully violated the rights of Plaintiff under the FLSA;

2. An award of unpaid back wages to the plaintiff under the FLSA, including unpaid overtime wages, self-employment taxes paid or owed by plaintiff but lawfully attributable to defendants, and any other negative tax consequence paid or owed by plaintiff associated with these payments;

3. An award of liquidated damages to the plaintiff under the FLSA, equal to the amount of plaintiff's unpaid overtime wages, lost back wages, lost future wages, and other compensation due to plaintiff;

4. An award of compensatory damages to the plaintiff under the FLSA's anti-retaliation provision, including compensation for plaintiff's mental anguish,

stress, inconvenience, loss of enjoyment of life, lost front wages, and out-of-pocket expenses;

5.   An award of punitive damages to the plaintiff against defendants, jointly and solidarily, under the FLSA's anti-retaliation provision;

6.   An award of reasonable attorney's fees, expert witness fees, costs, and pre-judgment and post-judgment interest incurred in this matter to the plaintiff under the FLSA; and,

7.   An award for all other legal and equitable relief to which plaintiff is entitled.

Respectfully submitted:

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz, TA (Bar #32746)
The Law Office of Kevin S. Vogeltanz, LLC
823 Carroll Street, Suite A / Mandeville, LA 70448
Telephone:  (504) 275-5149
Facsimile:  (504) 910-1704
Email: vogeltanz@gmail.com

*Attorney for Rafael Bardales*

**Clerk of Court: please hold summons while plaintiff attempts to secure waiver of service**